CORRECTED

Case No.: 2014-5132
_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
_____

AMERICAN AUTO LOGISTICS, LP,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA and
INTERNATIONAL AUTO LOGISTICS, LLC,

Defendants - Appellees.
_____

ON APPEAL FROM THE UNITED STATES
COURT OF FEDERAL CLAIMS

Judge Marion Blank Horn
_____

BRIEF OF APPELLEE INTERNATIONAL AUTO LOGISTICS, LLC
_____

W. Brad English
Gary L. Rigney
Jon D. Levin
J. Andrew Watson, III
Emily J. Chancey
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street, SW
Huntsville, Alabama 35801
(256) 551-0171 (Telephone)
(256) 512-0119 (Facsimile)

ATTORNEYS FOR APPELLEE
INTERNATIONAL AUTO LOGISTICS, LLC

**Form 9**

FORM 9.   Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

_____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

_____

_____

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____

_____

_____        _____
            Date                                   Signature of counsel

                                    _____
                                            Printed name of counsel

Please Note: All questions must be answered

cc: _____

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASE ....................................................v

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE................................................................1

SUMMARY OF ARGUMENT ..............................................................2

ARGUMENT ........................................................................................5

I.   INTRODUCTION AND STANDARD OF REVIEW...................5

II.  THE AGENCY PROPERLY CONSIDERED THE PAST
     PERFORMANCE OF INTERNATIONAL'S SUBCONTRACTOR'S
     EUROPEAN AFFILIATE............................................................8

     A.   The European Affiliate of International's Subcontractor was
          Identified in International's Proposal..................................10

     B.   Trans Global Logistics Europe's Resources Were Pledged
          For Performance of the Contract.........................................13

III. AMERICAN CANNOT REWRITE THE RFP ...........................16

IV.  THE TRIAL COURT APPLIED THE APPROPRIATE
     STANDARD UNDER THE APA.................................................18

A.    The Trial Court Afforded the Affidavits Submitted at
GAO Only Their Due Consideration ...................................................18

B.    The Trial Court Considered the Relevant Portions
of the RFP............................................................................................23

CONCLUSION AND STATEMENT OF RELIEF ................................................23

PROOF OF SERVICE............................................................................................25

# TABLE OF AUTHORITIES

## Cases

Afghan Am. Army Serv. Corp v. United States,
    106 Fed. Cl. 714 (2012)............................................................ 20, 22

Axiom Res. Mgmt., Inc. v. United States,
    564 F.3d 1374 (Fed. Cir. 2009) ....................................................20

Bannum, Inc. v. United States,
    404 F.3d 1346 (Fed. Cir. 2005) ......................................................6

Burroughs Corp. v. United States,
    617 F.2d 590 (Ct. Cl. 1980)............................................................7

Caddell Constr. Co., Inc. v. United States,
    111 Fed. Cl. 49 (2013)..................................................................20

Femme Comp, Inc. v. United States,
    83 Fed. Cl. 704 (2008)..............................................................8, 15

Galen Med. Assocs., Inc. v. United States,
    369 F.3d 1324 (Fed. Cir. 2004) ..................................................6, 7

Glenn Def. Marine (ASIA) PTE, Ltd. v. United States,
    720 F.3d 901 (Fed. Cir. 2013) ....................................................6, 7

Glenn Def. Marine (ASIA), PTE Ltd. v. United States,
    105 Fed. Cl. 541 (2013)................................................................. 7

Gulf Grp., Inc. v. United States,
    61 Fed. Cl. 338 (2004)....................................................................7

Holloway & Co., PLLC v. United States,
    87 Fed. Cl. 381 (2009)..................................................................20

Impresa Construzioni Geom. Domenico Garufi v. United States,
    238 F.3d 1324 (Fed. Cir. 2001) ......................................................7

Vanguard Recovery Assistance v. United States,
99 Fed. Cl. 81 (2011) ......................................................................................20

**Administrative Decisions:**

Ecomplex, Inc., B-292865.4 et al.,
2004 CPD ¶ 149 (Comp. Gen. June 18, 2004) ...............................................9

Hot Shot Express, Inc., B–290482,
2002 CPD ¶ 139 (Comp. Gen. Aug. 2, 2002) ................................................8

IAP-Hill, LLC, B-406289,
2012 CPD ¶ 151 (Comp. Gen. Apr. 4, 2012) .................................................9

Serco, Inc., B-406683 et al.,
2012 CPD ¶ 216 (Comp. Gen. Aug. 3, 2012) ................................................9

**Statutes:**

5 U.S.C. § 706 ...............................................................................................................6

28 U.S.C. § 1491 ...........................................................................................................6

**Rules:**

RCFC Appendix C .......................................................................................................20

**Other:**

Noerr LLP, Guide to Doing Business: Germany, LexMundi (Oct. 2010) ..............13

## STATEMENT OF RELATED CASES

There has been no prior appeal of the underlying action to this Court or other appellate courts.  Counsel for International Auto Logistics, LLC ("International") are not aware of any other pending actions that will directly affect the Court's decision in this appeal.

## STATEMENT OF THE ISSUES

1.      Whether the United States Court of Federal Claims (the "Trial Court") erred in granting the Motions for Judgment on the Administrative Record filed by the United States Transportation Command (the "Agency") and International.

2.      Whether the Trial Court erred in denying the Motion for Judgment on the Administrative Record filed by American Auto Logistics, LP ("American").

## STATEMENT OF THE CASE

This appeal concerns the award of a government contract to provide transportation and storage services for vehicles owned by members of the armed forces and Department of Defense civilian employees (the "Contract"). The Contract was awarded pursuant to a Request for Proposals dated May 1, 2013 (the "RFP"). International, American and three other offerors submitted proposals in response to the RFP. The Agency awarded the Contract to International on October 24, 2013.

American protested the Agency's award of the Contract to International before the United States Government Accountability Office (the "GAO"). The GAO denied American's protest. American subsequently filed a bid protest with

the Trial Court. American's protest before the Trial Court was predicated on arguments that were the same or similar to those presented to the GAO.

Pursuant to the Trial Court's direction, American, the Agency, and International each filed a motion for judgment on the administrative record. The Trial Court determined that the Agency acted reasonably in considering the past performance of International, its team members and affiliates, and granted the judgments on the administrative record filed by the Agency and International. The Trial Court denied the motion for judgment on the administrative record filed by American.

## SUMMARY OF ARGUMENT

The instant appeal is the disappointed incumbent offeror's last effort to retain the Contract. Since the Agency selected International's proposal for award, American has challenged the Agency's decision at the GAO, in the Trial Court, and now before this Court. American's arguments were properly rejected by the GAO and by the Trial Court.

American's arguments have consistently focused on the Agency's past-performance evaluations. American apparently believes that only it, the incumbent, possess any experience worthy of credit as being responsive to the RFP. American presents the Court with two basic arguments: (i) that the Agency

2

improperly evaluated International's subcontractors' past performance; and (ii) the Trial Court failed to adhere to the Administrative Procedures Act (the "APA"). Both arguments are misplaced.

American's past performance arguments are bifurcated as follows: (a) American contends that the Agency was not permitted to consider the past performance of the European affiliate of International's subcontractor; and (b) American insists that the Agency should not have credited International for its subcontractor's past-performance because, according to American, they were not "principal subcontractors" performing "major or critical" aspects of the Contract. Neither argument is supported by the Record or the law.

American refuses to accept the Agency's decision to credit International with the past performance of its subcontractor's European affiliate. American's quarrel with the Agency stems from the fact that the European affiliate is incorporated separately from International's subcontractor. Both the GAO and the Trial Court held, correctly, that the Record supported the Agency's evaluation because the European affiliate was identified as a "European Branch" and its resources were pledged to performance of the Contract.

The Agency likewise acted reasonably in evaluating International's subcontractor's past performance. The terms "principal," "major" and "critical"

are not defined in the RFP.  The Agency reasonably interpreted those terms to be

measures of the substance and nature of the work performed, and not tied to the

value thereof, as American insists.  American cannot impose upon the Agency its

own self-serving definitions of the RFP's terms. The Agency's qualitative

approach was reasonable and consistent with the RFP; therefore, its decision is due

to be upheld.

American's second basic argument, is that the Trial Court acted in a manner

inconsistent with the APA in deciding the protest.  Again, American's argument is

two-pronged.  First, American contends that the Trial Court usurped the Agency's

decision-making process by considering affidavits submitted to the GAO, and not

before the Agency during evaluation.  Secondly, American contends that the Trial

Court failed to follow the APA when it refused to impose upon the Agency the

value-based definitions of "critical" "major" and "principal" urged by American.

Both arguments are erroneous.

The Trial Court's opinion was perfectly in keeping with the APA.  The Trial

Court considered the affidavits at issue to aid in judicial review, and only for the

purpose of clarifying information that it found within the Record before the

Agency.  Secondly, the RFP did not define the terms "major" "critical" or

"principal," and neither the Agency nor the Trial Court was bound to accept the

value-focused definitions upon which American insists.  The Trial Court's limited, and appropriate, consideration of the subject affidavits, and its rejection of American's value-based definitions, were appropriate and consistent with the APA.

For the foregoing reasons, the Trial Court's judgment must be affirmed.

## ARGUMENT

## I.     INTRODUCTION AND STANDARD OF REVIEW.

This appeal presents the latest chapter in the saga that is American's continued challenge to the Agency's decision to award the Contract to International.  After its protest was denied at the GAO, American repackaged its arguments and presented them to the Trial Court, which likewise found them to be without merit.  American's appeal advances the same tired arguments that have been soundly defeated in two prior instances.  Specifically, American continues its assault on the Agency's evaluation of International's team's past performance, maintaining that only the incumbent (which happened to be American) should have received any positive past performance ratings.

As demonstrated herein, the Agency properly evaluated International's past performance, including that of its subcontractor's European affiliate.  The Trial Court did not err when it found reasonable the Agency's past performance

evaluation.  Nor did the Trial Court err when it considered affidavits submitted to the GAO for the purpose of clarifying the Record and assisting with judicial review thereof.  The Trial Court's review was, in all respects, consistent with the APA.

The Court will review the Trial Court's decision on a *de novo* basis.  Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013).  The *de novo* standard does not, however, relieve American of the heavy burden placed on protestors challenging a past performance evaluation conducted in a negotiated procurement, resulting in a best-value award.  Instead, the Court's review, like that of the Trial Court, will be conducted in accordance with the highly deferential standards articulated in Glenn Defense Marine.  720 F.3d at 907 (citing 28 U.S.C. § 1491(b)(4), which adopts the standard of 5 U.S.C. § 706, and Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005)).  The Court's review will not turn on whether it agrees with the Agency's ultimate decision, but whether the Agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."  Id.

The foregoing standard presents an even heavier burden in this case which, as mentioned previously, involves a negotiated procurement and a best-value award.  Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir.

2004); Glenn Def. Marine, 720 F.3d at 907 (citing Burroughs Corp. v. United States, 617 F.2d 590, 597 (Ct. Cl. 1980))("[T]he greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious."). Indeed where, as here, the protestor challenges an agency's past performance evaluation, the agency enjoys the most deferential standard possible: the so-called "triple whammy of deference." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 105 Fed. Cl. 541, 547-48 (2012)(quoting Gulf Grp., Inc. v. United States, 61 Fed. Cl. 338, 351 (2004) aff'd by Glenn Def. Marine, 720 F.3d 901(Fed. Cir. 2013). In conducting its review, the Court must defer to the Agency's judgment as long as the evaluators "considered the relevant factors and information and articulated a reason for their decision that is not clearly erroneous." Gulf Grp., 61 Fed. Cl. at 353-54; see also Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001).

American divides its argument into four (4) sections. (Appellant's Br.) Sections II.B and III.A contain challenges to the Agency's past performance evaluations. (Id.) Sections II.C and III.B assert that the Trial Court's consideration of the Record violated the APA. (Id.) Rather than address American's arguments *seriatim*, International will address the issues regarding the Agency's past performance evaluation together, and do likewise with American's arguments that the Trial Court violated the APA.

7

In the following sections, International explains why it was reasonable for the Agency to credit International with the past performance of its subcontractor's European affiliate. Next, International discusses why the Trial Court properly rejected American's attempt to ascribe its own self-serving definitions to undefined terms of the RFP. Lastly, American demonstrates why the Trial Court's review and judgment was in keeping with the APA.

In sum, judged against the "triple whammy of deference," American's protest was rightly rejected by the Trial Court. The same result should follow in this appeal. For the following reasons, the Trial Court's judgment should be affirmed.

## II. THE AGENCY PROPERLY CONSIDERED THE PAST PERFORMANCE OF INTERNATIONAL'S SUBCONTRACTOR'S EUROPEAN AFFILIATE.

It is well-settled that an agency can reasonably consider an affiliate's performance history if it will employ resources on the contract. In <u>Femme Comp, Inc. v. United States</u>, 83 Fed.Cl. 704, 747 (2008), the U.S. Court of Federal Claims held that an agency may reasonably attribute the past performance of an affiliate to a contractor if "the firm's proposal demonstrates that the resources of the parent or affiliated company will affect the performance of the offeror." (<u>quoting</u> <u>Hot Shot Express, Inc.</u>, B–290482, 2002 CPD ¶ 139 (Comp. Gen. Aug. 2, 2002). The fact

that an affiliate is not expressly listed is immaterial.  Id.  The GAO has reached a

similar conclusion on a number of occasions.  See, e.g., Serco, Inc., B-406683, et

al., 2012 CPD ¶ 216 at 6-7 (Comp. Gen. Aug. 3, 2012); IAP–Hill, LLC, B-406289,

2012 CPD ¶ 151 at 3-4 (Comp. Gen. Apr. 4, 2012); Ecomplex, Inc., B-292865.4 et

al., 2004 CPD ¶ 149 at 5 (Comp. Gen. June 18, 2004); Hot Shot Express, Inc.,

2002 CPD ¶ 139 at 3.

   As demonstrated in the following sections, Trans Global Logistics Europe[1]

was adequately identified in International's proposal, and its resources were

pledged to Contract requirements.  Accordingly, as the Trial Court held, it was not

arbitrary or capricious for the Agency to consider Trans Global Logistics Europe's

past performance.  The Agency's reasonable actions are entitled to significant

deference and should not be disturbed.[2]

---

[1] Global Auto Logistics is one of International's subcontractors.  Global Auto
Logistics is a subsidiary of Trans Global Auto Logistics, created to serve as the
government contracting entity for Trans Global Auto Logistics.  Trans Global
Logistics Europe is an affiliate of both Trans Global Auto Logistics and Global
Auto Logistics.  (A11819.)

[2] The prejudice associated with American's argument regarding Trans Global
Logistics Europe's past performance is minimal at best.  A further investigation
into Trans Global Logistics Europe's anticipated involvement in contract
performance would confirm what is now undisputed - - that Trans Global Logistics
Europe will be significantly involved in performing the Contract.

**A.** **The European Affiliate of International's Subcontractor was Identified in International's Proposal.**

American has made clear its vociferous objection to the Agency's consideration of the past performance of Trans Global Logistics Europe, which is the affiliate of Global Auto Logistics/Trans Global Auto Logistics, one of International's core subcontractors.  (Appellant's Br. 29-31.)  Initially, American contends that the separate legal existence of Trans Global Logistics Europe was not identified to the Agency, rendering the Agency's consideration of its past performance unreasonable.  (Id.)  While seizing upon the separate corporate existence of the European Branch, American fails to demonstrate how that fact has any bearing on the primary issue of the availability of the European Branch's resources for Contract performance.  (Appellant's Br. 13.)  A review of the Record - - the last place that American wants the Court to look - - leads to a conclusion contrary to that drawn by American.

The Record shows quite clearly that:  Global Auto Logistics/Trans Global Auto Logistics had a European Branch; principals of Global Auto Logistics/Trans Global Auto Logistics were regularly engaged in European Branch activities; and that the European Branch was to fulfill Contract requirements in Europe. (A11431, A11441, A11819, A13059-60, A13126-27.)  In its proposal, International identified Trans Global Logistics Europe as a key component of Trans Global Auto

10

Logistics' performance under the Contract effort.  International explained the

parties' relationship and identified Trans Global Logistics Europe's European

Branch, as follows:

> [Trans Global Auto Logistics] was established June 2002
> and has offices in Texas, Florida, Germany, the U.K., and
> France…. [Global Auto Logistics] was formed as a
> special purpose company, with the goal of participating in
> bidding and obtaining support contracts with the U.S.
> Government.

(A11849.)  International's past performance proposal explicitly attributes prior

work to Global Auto Logistics/Trans Global Auto Logistics' European branch

office.  (A11431 (Allied International), A11441 (Volkswagen).)  International's

proposal identifies Global Auto Logistics/Trans Global Auto Logistics' European

Branch personnel as "team member company personnel performing and/or

supporting major or critical elements of the contract" in the section of its proposal

entitled "Team IAL Relevant Human Resources, IAL."  (A11805.)  One of the

team members designated to perform such "major or critical elements of the

Contract" was Mr. Joachim Wetz, identified as "[Trans Global Auto Logistics]

General Manager, Vice President of European Operations."  (A11819; A13059-60;

A13126-27.)  Mr. Wetz's business biography twice identified him as a Trans Global

Auto Logistics employee, reiterating that he is currently the General Manager and

Vice President of [Trans Global Auto Logistics'] "European Branch."  (Id.)

International's proposal reiterated the link between Trans Global Auto Logistics and Trans Global Logistics Europe by subsequently referencing the prior experience of "GAL's owner, Kay Lester, and her European managing partner, Joachim 'Joe' Wetz," who "previously participated in the predecessor P-5 and GPC I and II programs for the incumbent contract holder." (A11849.)

That Trans Global Auto Logistics Europe was not described as a separate legal entity is of no import; International's proposal made clear that its European Branch - - which all agree to be a reference to Trans Global Logistics Europe - - would fulfill the European requirements of the Contract. (A11431, 11441.) During discussions between International and the Agency, International further demonstrated the nature of Trans Global Logistics Europe's relationship with Global Auto Logistics/Trans Global Auto Logistics by explicitly discussing Joe Wetz and Kay Lester, the two principals of Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe. (A12241.)

The Record contained more than enough information from which the Agency could have made the reasonable conclusion that Trans Global Auto Logistics' European Branch was to perform the Contract requirements based in Europe. That Trans Global Logistics Europe is technically a separate legal entity, as opposed to a "Branch," is a distinction without a difference. As plainly revealed

by the Record before the Trial Court, Trans Global Logistics Europe is not operated as a separate legal entity, as but as merely a "Branch" of Trans Global Auto Logistics.[3]  Given the many references to Trans Global Logistics Europe's European Branch, and its role in contract performance, it was perfectly appropriate for the Agency to determine that Trans Global Logistics Europe's European Branch, regardless of its corporate structure, was an integral part of International's proposal.

### B.    Trans Global Logistics Europe's Resources Were Pledged for Performance of the Contract.

As set forth above, International clearly evidenced its intent for the European Branch of Trans Global Auto Logistics to perform the European

---

[3] It should be noted it is standard practice for an American company doing business in European countries to organize exactly the way Trans Global Auto Logistics established its European Branch in Germany.  In the Guide to Doing Business applicable to Germany (and in the other guides applicable to most all other European countries), the Lex Mundi worldwide law firm association actually recommends the formation of a separate entity to act as a branch office when a company wants to carry out business in Germany and other European countries. Noerr LLP, Guide to Doing Business: Germany, LexMundi, 5 (Oct. 2010), available at http://www.lexmundi.com/lexmundi/Guides_To_Doing_Business.asp ("From a corporate law perspective, the GmbH is the legal form most commonly used by foreign investors.").  Simply following normal corporate practices to establish a European Branch Office does not mean that Trans Global Auto Logistics was required to treat that office as an entirely different company; in fact, the record confirms that Trans Global Auto Logistics did not treat its European Branch as a different company.   For that matter, American fails to explain why this arrangement is so surprising, given that most countries (European and otherwise) have these individualized entity registration requirements.

13

requirements of the Contract.  International confirmed the availability of assets of

Global Auto Logistics/Trans Global Auto Logistics - - including those of Trans

Global Logistics Europe, its European Branch - - during discussions, making clear

that Global Auto Logistics/Trans Global Auto Logistics "will have full access to

the resources of Trans Auto Global Logistics [], including workforce… necessary

for contract performance."  (A12241.)  International provided the Agency with a

letter from Kay Lester, confirming that Trans Global Auto Logistics would provide

its resources to Global Auto Logistics for performance of Contract requirements.

(Id.)  In addition, International provided examples of how those resources would

be made available, specifically mentioning Joe Wetz and Kay Lester, the two

principals of Global Auto Logistics/Trans Global Auto Logistics/Trans Global

Logistics Europe, and identifying all of the European work that these companies

intended to perform:

> Some examples of how [Trans Global Auto Logistics]
> will assist GAL. First all of [Trans Global Auto
> Logistics'] *key personnel as outlined in the proposal
> such as Kay Lester*, Tony Lester and *Joe Wetz*, all with
> unquestioned prior [contract] and similar related service
> as well as their supportive team members will be on hand
> and on call to assist [Global Auto Logistics]. From
> training, to quality operational processes and procedures,
> Ocean and Inland Logistics and more. Here are a few
> relevant examples:  POV PROCESSING = previous
> [contract], 2POV, Canadian service members and major
> manufacturer expertise all best practices and knowledge
> will be applied. OCEAN TRANSPORT- Import/export

14

documentation, agriculture clearance requirements will
insure no delays in vehicle transport. CUSTOMER
SERVICE-personalized service and attention to detail,
"our customers are why we exist" and we will do
everything possible to perform at the highest levels in
order to meet every RDD and complete every move with
a hands on approach conforming with the PWS
guidelines. Again these are just some examples, we are
proud to be a part of this proposal as part of Team
[International]. Each of us: Kay, Tony and Joe welcome
the opportunity to discuss any of these items in detail
with you.

(Id.)

During the proposal and discussion process, it was made clear that the

resources of Trans Global Auto Logistics included those of its European Branch,

Trans Global Logistics Europe.  As the Trial Court noted:

[T]here was, in fact, sufficient information available to
the agency at the time of award included in the proposal
and in [International]'s responses to the evaluation
notices, such that the agency's consideration of Trans
Global Auto Logistics' European affiliate or branch
office's past performance was not arbitrary or capricious.

(A00073.)  The Agency therefore reasonably (and correctly) determined that Trans

Global Logistics Europe's resources were pledged to contract performance.

As mentioned earlier in this Section, the Agency is entitled to consider past

performance of affiliates - - even unidentified affiliates - - so long as such affiliate's

resources are pledged for contract performance.  Femme Comp, 83 Fed. Cl. at 747.

As the foregoing sections made clear, Trans Global Logistics Europe was adequately identified in International's proposal, and its resources were clearly pledged for Contract performance. Thus, the Agency acted reasonably when it considered Trans Global Logistics Europe's past performance. The Trial Court's decision to uphold the Agency's reasonable action should be affirmed.

## III. AMERICAN CANNOT REWRITE THE RFP.

American argues that the Agency erred in determining the past performance of Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe to have been "relevant" because, ***according to American***, it was not a "principal" subcontractor. (Appellant's Br. 40-44.) Indeed, American asks the Court to re-craft the RFP to define - - in the manner most favorable to American - - the terms "principal," "major," and "critical." (Id.) Specifically, American insists that those terms should be predicated upon the dollar value of the work to be performed by the subcontractor. Following that reasoning, American argues that Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe is not a "principal" subcontractor because it would purportedly perform only $3 to $4 million of work per year. (Id. at 15.)

The RFP does not require that the definitions of "principal," "major," or "critical" be tied to the dollar value of the work to be performed. Rather, the RFP

established a qualitative approach and tied the term "principal" to those companies performing "major or critical ***aspects*** of this requirement." (A11155.) In other words, it was the substance of the work performed, not its value or volume, which determined whether a concern was a "principal" subcontractor. (Id.)

International's proposal made clear that Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe would perform key aspects of the Contract's requirements. Specifically, Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe was proposed to: (1) operate nearly all of the Vehicle Processing Centers ("VPCs") and Facilities in Europe; (2) provide road transport both in and outside the United States; (3) perform customs clearance work; and (4) run five contractor-owned/contractor operated VPCs worldwide and twelve government-owned/contractor operated VPCs in Europe. (A11765, A11784.) There can be no question that the foregoing requirements are key within the RFP's Performance Work Statement, which addressed these as primary topics: Facilities in Section 1.3.1; Transportation in Section 1.3.5; and Vehicle Storage in Section 1.3.6. (A11160-11163.)

The Trial Court obviously recognized that the RFP intended for a qualitative analysis, and rejected American's attempt to impose a dollar value requirement:

> [P]rotestor has not provided sufficient evidence that
> Global Auto Logistics is projected to earn only $3–4

million per year on the contract. It is correct that
International Auto Logistics advertises Global Auto
Logistics in its proposal as a "woman-owned small
business," and states in a separate chart within the
proposal that women-owned small businesses are
anticipated to receive between $3–4 million of the overall
contract per year. At the same time, however, Global
Auto Logistics is slated in the proposal to operate five
contractor owned and operated vehicle processing centers
internationally, two vehicle storage facilities within the
United States, and twelve government owned but
contractor operated vehicle processing centers in Europe.
Except for the one chart protestor points to, the
calculations extrapolated from the solicitation, although
only projections, suggest that Global Auto Logistics and
its affiliates would earn, or at least generate as revenue
for International Auto Logistics, more than the $3–4
million from the GPC III contract if awarded.

(A00073-00074.) The Agency's qualitative approach was required by the RFP and

was perfectly reasonable. The Trial Court's approval of that approach was

appropriate and should be affirmed.

## IV.   THE TRIAL COURT APPLIED THE APPROPRIATE STANDARD UNDER THE APA

### A.   The Trial Court Afforded the Affidavits Submitted at GAO Only Their Due Consideration.

American argues that the Trial Court violated the APA by considering the

affidavits of Ms. Lester and Mr. Wetz which were before the GAO, but not the

Agency. (Appellant's Br. 33-38.) As a stand-alone proposition, such a fact might

be troubling. However when placed in the proper context, the existence of such

18

affidavits, and the Trial Court's limited consideration thereof, was entirely appropriate.

As aforesaid, American has long contended (incorrectly) that neither International's proposal nor the record before the Agency adequately described the relationship between Trans Global Auto Logistics and Trans Global Logistics Europe.  (Id.)  In an effort to bolster that misplaced argument, as part of the GAO proceedings, American provided a copy of Trans Global Logistics Europe's website, and urged the GAO to draw incorrect conclusions from its contents.  (A12902-03.)  To combat American's inaccurate assertions, International provided the GAO with affidavits from Kay Lester and Joe Wetz, so as to clarify the evidence already within the Record.  (A12954-55.)  These affidavits affirmed the plain language of International's proposal, and clearly established:  (1) that Trans Global Logistics Europe is a subsidiary of Trans Global Auto Logistics; and (2) that Trans Global Logistics Europe stood ready to perform under the Contract.[4]   (Id.)

The subject affidavits were correctly included as part of the record before the Trial Court.  Caddell Constr. Co., Inc. v. United States, 111 Fed. Cl. 49, 93-94 (2013); Vanguard Recovery Assistance v. United States, 99 Fed. Cl. 81, 102

---

[4] Ms. Lester, a principal at Global Auto Logistics, Trans Global Auto Logistics, and Trans Global Logistics Europe, organized Trans Global Logistics Europe and runs daily branch operations with Mr. Wetz, a co-owner in the venture.  (A12954-55.)  Other members perform additional roles for the branch office.

(2011); Holloway & Co., PLLC v. United States, 87 Fed. Cl. 381, 392 (2009).  The

Rules of the Court of Federal Claims provided the Trial Court with the discretion

to consider "the record of any previous administrative or judicial proceedings

relating to the procurement, including the record of any other protest of the

procurement." RCFC App. C, ¶¶ 22, 22(u), 23.  The scope of that Rule includes

declarations and affidavits offered by parties other than the Agency.  Caddell

Constr., 111 Fed. Cl. at 93-94; Vanguard Recovery, 99 Fed. Cl. at 102; Holloway,

87 Fed. Cl. at 392.

American concedes that the subject affidavits were properly before the Trial

Court, but insists that the Trial Court's alleged reliance thereon usurped the

Agency's function and violated the APA.  (Appellant's Br. 37.)  American is

incorrect.  The Trial Court's limited consideration of the subject affidavits was

consistent with the APA.

The Trial Court had the discretion to consider the affidavits to the extent that

they assisted with judicial review of the record.  Afghan Am. Army Serv. Corp. v.

United States, 106 Fed. Cl. 714, 724 (2012); see also, Axiom Res. Mgmt., Inc. v.

United States, 564 F.3d 1374, 1379-80 (Fed. Cir. 2009).  As mentioned above, it

was American, not International, which sought to include extraneous materials in

the proceedings before GAO.  (A12902-03.)  Only after American submitted a

copy of Trans Global Logistics Europe's website were the subject affidavits offered.  The affidavits were not submitted to provide a *post hoc* rationalization for the Agency but, instead, to clarify the already-existing contents of the Record, which was (and remains) the subject of American's inaccurate description.

As has been discussed above, the nature of the relationship between Global Auto Logistics/Trans Global Auto Logistics and Trans Global Logistics Europe was at issue before the GAO and the Trial Court.  The affidavits at issue merely described in more precise fashion the corporate relationship of Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe and the meaning of "Branch" set forth in International's proposal.  The Trial Court was well within its right to consider the explanation set forth in the affidavits for purposes of facilitating its review.

American would like this Court to believe that the affidavits were the <u>only</u> support for the Trial Court's decision as to the propriety of the Agency's consideration of Trans Global Logistics Europe's past performance.  But that is simply not the case.  As set out in detail above, the Agency had before it ample information to demonstrate that Trans Global Logistics Europe's resources were pledged to Contract performance.  (A00073; A11431; A11441; A11763; A11817;

A11819; A11849; A11850; A11892; A12241; A13059-60; A13126-27.)  The Trial

Court noted as much in rejecting American's argument:

> [A]lthough the affidavits submitted to the GAO further
> clarify the agency's and intervenor's arguments, there
> was, in fact, sufficient information available to the
> agency at the time of award included in the proposal and
> in the intervenor's responses to the evaluation notices,
> such that the agency's consideration of Trans Global
> Auto Logistics' European affiliate or branch office's past
> performance was not arbitrary or capricious….
>
> Based on the intervenor's proposal, it was reasonable for
> the source selection authority to find that Global Auto
> Logistics' European resources would be committed to the
> contract if awarded to the intervenor, and, therefore, to
> consider Trans Global Auto Logistics Europe's past
> performance references.

(A00073-74.)

The Trial Court made clear that it was considering the subject affidavits to

"clarify" arguments and aid in judicial review.  (Id.)  For that purpose, the Trial

Court's consideration of the subject affidavits was entirely appropriate.  Afghan

Am. Army, 106 Fed. Cl. at 724.  And because the information clarified by the

subject affidavits was before the Agency at the time of award, the Trial Court did

not usurp the Agency's role by determining it reasonable to consider Trans Global

Logistics Europe's past performance.  Accordingly, this Court should affirm the

Trial Court.

**B.**     **The Trial Court Considered the Relevant Portions of the RFP**

American argues that the Trial Court abandoned the APA standard of review in considering Global Auto Logistics/Trans Global Auto Logistics/Trans Global Logistics Europe's past performance because it failed to determine whether it was a "principal subcontractor" performing "major" or critical" portions of the Contract. American's contention is a rehash of its attempt to provide its own definition of such terms in the RFP. As described above, the Trial Court correctly rejected American's self-serving definitions and, instead, determined that the Agency acted reasonably in conducting a substantive analysis, as opposed to a rote process inextricably tied to dollar values.

## CONCLUSION AND STATEMENT OF RELIEF

As demonstrated herein, the Agency's past performance evaluation was reasonable, and not arbitrary, capricious or contrary to law. The Trial Court's review and holding was consistent in all respects with the APA. For these reasons, as more fully explained above, the Trial Court's judgment should be affirmed.

Respectfully submitted,

*/s/ W. Brad English*
W. Brad English
Gary L. Rigney
Jon D. Levin
J. Andrew Watson, III
Emily J. Chancey

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, Alabama 35801
Telephone: (256) 551-0171
Fax: (256) 512-0119
benglish@maynardcooper.com
grigney@maynardcooper.com
jlevin@maynardcooper.com
awatson@maynardcooper.com
echancey@maynardcooper.com

*Attorneys for Appellee International Auto Logistics, LLC*

## **PROOF OF SERVICE**

I certify that a copy of the foregoing Corrected Brief of Appellee International Auto Logistics, LLC has been served upon the following counsel of record through the Court's electronic filing system and via Federal Express on this the 16th day of December, 2014:

Timothy Sullivan, Esq.
Katherine S. Nucci, Esq.
Scott F. Lane, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
tsullivan@thompsoncoburn.com
knucci@thompsoncoburn.com
slane@thompsoncoburn.com

Douglas K. Mickle, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
douglas.mickle@usdoj.gov

*/s/ W. Brad English*
*Of Counsel*